IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Xavir Enos, | ) | C/A No. 0:10-2179-DCN-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Xavir Enos ("Enos"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## ADMINISTRATIVE PROCEEDINGS

In January 2007, Enos applied for DIB, alleging disability beginning June 2, 2005. Enos's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on April 8, 2009, at which Enos, who was represented by Donald R. Moorhead, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on July 29, 2009 concluding that Enos was disabled between July 2, 2005 and October 7, 2007, but was not disabled between October 8, 2007 and the date of the ALJ's decision. (Tr. 10-18.)

Enos was forty-eight years old at the time of his alleged disability onset date. (Tr. 27.) He has a high school education and past relevant work experience as a material handler and a security

guard. (Tr. 150, 156.) Enos alleges disability since July 2, 2005, the date he, his wife, and his adult son were involved in a motor vehicle accident that resulted in the death of his wife. He alleges that as a result, he suffers from post traumatic stress disorder, depression with high anxiety, panic disorder, phobic disorder, unresolved grief with high survivor's guilt, suicidal ideation, and depression. (Tr. 149.)

The ALJ found as follows:

1. The claimant met the insured status requirements of the Social Security Act as of July 2, 2005, the date the claimant became disabled.

2. The claimant has not engaged in substantial gainful activity since July 2, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq*.).

* * *

3. At all times relevant to this decision, the claimant has had the following combination of medically determinable severe impairments: depression, anxiety with a panic disorder, and post traumatic stress disorder (20 CFR 404.1520(c)).

* * *

4. From July 2, 2005 through October 7, 2007, the period during which I find that the claimant was disabled, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).

* * *

5. After careful consideration of the entire record, I find from July 2, 2005 through October 7, 2007, the claimant had the residual functional capacity to perform a full range of work at all exertional levels. However his mental impairments created additional nonexertional limitations.

* * *

6. From July 2, 2005 through October 7, 2007, the claimant was unable to perform past relevant work (20 CFR 404.1565).

* * *

7. The claimant was born on [REDACTED], 1957 and was 48 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity assessed for the period from July 2, 2005 through October 7, 2007 (20 CFR 404.1568).

                              *      *      *

10.     From July 2, 2005 through October 7, 2007, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

                              *      *      *

11.     The claimant was under a disability, as defined by the Social Security Act, from July 2, 2005 through October 7, 2007 (20 CFR 404.1520(g)).

12.     Medical improvement occurred on October 8, 2007 (20 CFR 404.1594(b)(1)).

                              *      *      *

13.     Beginning on October 8, 2007, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2)).

                              *      *      *

14.     After careful consideration of the entire record, I find that, beginning on October 8, 2007, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels, but had some limitations secondary to nonexertional impairments.

                              *      *      *

15.     The medical improvement that has occurred is related to the ability to work (20 CFR 404.1594(b)(4)(i).  In comparing the above residual functional capacities, I find that the claimant's functional capacity for basic work activities has increased.

16.     Since October 8, 2007, the claimant has been an individual closely approaching advanced age (20 CFR 404.1563).

                              *      *      *

17.     Beginning on October 8, 2007, the claimant has been unable to perform past relevant work (20 CFR 404.1565).

                              *      *      *

18.     Beginning on October 8, 2007, transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

19.     Beginning on October 8, 2007, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

                              *      *      *

20.     The claimant has not been disabled at any time from October 8, 2007 through the date of this decision (20 CFR 404.1594(f)(8)).

(Tr. 14-39.)  On June 17, 2010, the Appeals Council denied Enos's request for review, making the decision of the ALJ the final action of the Commissioner.  (Tr. 1-4.)  This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the ALJ to consider, in sequence:

(1)     whether the claimant is engaged in substantial gainful activity;

(2)     whether the claimant has a "severe" impairment;

(3)     whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)     whether the claimant can perform his past relevant work; and

(5)     whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner

must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Enos raises the following issues for judicial review:

1.     Did the Administrative Law Judge commit revers[i]ble error by failing to accord great weight to Mr. Enos' treating health care providers, Barbara J. McIntyre, Diane S. Milam, and Dr. Alfred R. Ebert?

2.     Did the Administrative Law Judge commit revers[i]ble error because critical findings by the Administrative Law Judge are not supported by substantial evidence?

3.     Did the Administrative Law Judge err as a matter of law in not taking into consideration Mr. Enos' excellent previous work record as required by 20 C.F.R. § 416.929(c)(3)?

4.     Did the Administrative Law Judge meet its burden of proof that Mr. Enos was capable of engaging in substantial gainful employment?

(Pl.'s Br., ECF No. 10.)

## DISCUSSION

### A.    Relevant Medical Background

In evaluating Enos's allegations of error, the following medical history is relevant.

### 1.    July 2, 2005 through October 7, 2007

On July 2, 2005—the alleged onset date—Enos, his wife, and his adult son were in a motor vehicle accident. Following the accident, Enos's wife passed away and Enos was hospitalized until July 11, 2005 due to abdominal injuries that required surgery. Computed Tomography ("CT") imaging after the accident and in August 2005 were negative. (See Tr. 235, 289-90, 351, 621, 632-33.)

Enos received a follow-up examination from Dr. Eric McGill who reported that Enos was healing normally physically and referred Enos for mental health care. (Tr. 617-19.) Enos reported to a care provider at Fairview Family Practice describing crying episodes, poor sleep, and nightmares and was assessed with post traumatic stress disorder. (Tr. 629-30.)

Enos began counseling with Barbara McIntyre, M.A. in September 2005.[1] (Tr. 662.) In a letter dated June 22, 2006, McIntyre summarized her sessions and opinion of Enos. Specifically, McIntyre stated that "at the time of onset" she rated Plaintiff's global assessment of functioning ("GAF") at 35[2] and explained that "[i]n the first few sessions the client was severely fragmented with high liability and mood instability." (Tr. 662.) McIntyre indicated that Enos responded well to the combination of medication (Lexapro) prescribed by a physician and regular therapy. (Id.) As of June 2006, McIntyre believed that unresolved stressors existed including Enos's inability to return to work, the resulting financial difficulties, his fear of driving or riding in a car, regression in symptom control due to anniversary dates relating to his wife and the accident, and physical pain. (Tr. 663.) Finally, McIntyre stated that she did not "foresee an early resolution to [some of his] problems but [did] anticipate resolution in the future, if he continues to cooperate and join in therapy and stays on the medication." (Id.) However, McIntyre expressed concerns that Enos's "financial problems will cause him to suspend both of these options, with potentially serious consequences." (Id.)

In an undated letter, McIntyre further stated that since June 22, 2006 Enos has experienced some improvement, although limited, in his emotional stability. (Tr. 664.) She noted that she was seeing Enos sporadically and had enlisted the assistance of another therapist. (Tr. 664-65.) With

---

[1] The ALJ includes a summary of McIntyre's records in his decision. (Tr. 20-21, 22.)

[2] The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, fourth edition ("DSM-IV"), contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning. According to the DSM-IV, a GAF score between 31 and 40 may reflect "[s]ome impairment in reality testing or communication" or a "major impairment in several areas such as work, school, family relations, judgment, thinking, or mood." Id. at 34. A GAF score may reflect the severity of symptoms or impairment in functioning at the time of the evaluation. Id. at 32-33.

regard to Enos's limitations, McIntyre indicated that Enos was not improving with regard to driving a vehicle, had stopped gardening and hunting, and had limited social contact. However, McIntyre stated that if Enos had transportation and found a job without too much physical stress, he could and would like to contribute to his own well-being. (Tr. 665.) Finally, McIntyre stated that Enos needed financial assistance and with proper medical and vocational care, he "would graduate from the system in short order." (Tr. 666.) In a letter dated September 30, 2007, McIntyre stated that she had only seen him a few times since her last report and that she had seen some improvement in Enos. McIntyre indicated that Enos continued to report panic attacks in public places and when driving or riding in a car and that he displayed "startle responses to unexpected stimuli." (Tr. 661.) McIntyre stated that his overall needs had not changed. There are no further records from McIntyre in the record.

On May 9, 2007, Dr. Bruce A. Kofoed conducted a consultative examination of Enos, which included reviewing McIntyre's records and the hospital records after the accident. (Tr. 632-36.) The ALJ accurately summarized Dr. Kofoed's report as follows:

> He notes that the claimant was married thirty years and since the auto accident, with the death of his wife, he had been emotionally distraught. The claimant was then in regular counseling with Barbara McInt[y]re.
>
> The claimant reported anxiety and panic type symptoms, and remained extremely angry at the driver of the car which collided with his. The other driver was reportedly drunk at the time of the accident, and was then in prison serving a six year sentence. The claimant said that he called the prison on a regular basis to "make sure he's still there," and "hoped he would die in prison." He also felt guilt that he survived the accident, and sometimes wished he hadn't. He had other depressive symptoms, including impaired sleep with awakening at 2:30 or 3:00 am, and difficulty returning to sleep. During the day he experienced intrusive thoughts and memories about his wife and the accident. He said that prior to the accident he had been a friendly, outgoing person, but had since retreated from social activities. He and his wife used to do everything together and he had a very difficult time coping with her loss. He has not driven since the accident, becomes tearful at the thought of driving, and was very anxious in a car and in crowds. He occasionally went to church with various neighbors or acquaintances, who also took him to the grocery. He could take care of

his personal needs, showered regularly, cared for his own home, and paid his bills, although his son now monitored his household finances. He used to hunt and fish, but had not done either since the accident. The claimant was treated with Lexapro until a month ago, when his medication was changed to Wellbutrin, which he had not yet filled because of financial difficulties.

Dr. Kofoed observed that his appearance was good, but he became tearful frequently during the interview, appeared jittery, took deep breaths apparently due to anxiety, but was cooperative and pleasant. He was extremely labile emotionally. During cognitive testing he appeared to put forth good effort. While he got a perfect score on Rey testing, he nonetheless was quite anxious during testing, distractible, impulsive, and did poorly in terms of work speed. "Sustained concentration appeared poor." WMS-III [Wechsler Memory Scale-III] testing indicated average intellectual ability, except in Working Memory, where he scored low average. Dr. Kofoed diagnosed post traumatic stress disorder, major depression relating to the death of his wife and complicated grief, and possible panic disorder, not otherwise specified.

(Tr. 21-22) (citing Tr. 632-36).

On May 25, 2007, Dr. Larry D. Clanton completed a "Psychiatric Review Technique" form and a "Residual Functional Capacity Assessment" form. (Tr. 637-54.) In completing these forms, Dr. Clanton reviewed Enos's medical records, which included McIntyre's and Dr. Kofoed's records. In discussing Enos's functional capacity, Dr. Clanton opined that Enos "is capable of understanding and remembering simple instructions, but would have difficulty with more complex instructions;" "is able to carry out simple tasks for two hours at a time without special supervision, and would not have an unacceptable number of work absences due to psychiatric symptoms;" "is able to relate appropriately to co-workers and supervisors, but would not be well suited for working with the general public;" and "can adapt to workplace changes, and can recognize and avoid normal hazards." (Tr. 653.) Dr. Clanton also opined that Enos's allegations were credible and that his symptoms are severe but would not preclude him from carrying out basic work functions. (Id.)

In determining that Enos was under a disability from July 2, 2005 through October 7, 2007, the ALJ assigned significant weight to Dr. Clanton's opinion and substantial weight to Dr. Kofoed's and McIntyre's opinions, which covered this period of time. The ALJ also found Enos's statements

concerning the limiting effects of his emotional symptoms during this time to be generally credible. Based on these opinions and Enos's statements, the ALJ found that Enos had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels; however, his nonexterional limitations included only performing simple one- to two-step tasks in a low stress work environment, not performing any type of assembly line or production work, not coming into contact with the public, and requiring frequent unscheduled rest breaks away from his work station for up to four hours per day.  (Tr. 25-26.)

### 2.     Beginning October 8, 2007

On October 8, 2007, Dr. Kofoed completed a second consultative examination of Enos.  (Tr. 668-71.)  During this examination, Dr. Kofoed found that Enos was extremely anxious and labile. Enos reported significant fearfulness about being in a vehicle and that he had not driven since the accident.  Enos stated that he received regular counseling, felt he had made improvement, felt less tearful and emotional, and was more positive and hopeful about his life in general.  Enos also reported that he continued to have significant problems with anxiety, intrusive thoughts, and poor sleep.  (Tr. 668.)  Enos stated that he interacted with a few neighbors who drive him to the grocery store or appointments, was not dating, was not involved in religious activities but occasionally read the Bible, enjoyed reading history and culture, did his own household chores, and ate basic simple foods that required little effort to cook.  Dr. Kofoed observed that Enos was punctual, dressed and groomed neatly and appropriately, talkative and friendly, and somewhat anxious during the interview.  Dr. Kofoed indicated that Enos reported continued problems being in a vehicle and was very anxious, easily startled, and on the edge.  Enos also stated that sleep was somewhat improved but that he continued to have problems with nightmares and intrusive thoughts relating to the accident.  Enos reported a fair appetite, that he was crying less although still frequently, and that he

did not have suicidal or homicidal intentions. Dr. Kofoed found no indications of psychotic processes. (Tr. 669.)

Dr. Kofoed observed that Enos put forth a good effort on cognitive tasks. With regard to Enos's ability to engage in work-related tasks, Dr. Kofoed stated, in relevant part:

> He continues to have difficulty coping with [his wife's] death. He is extremely anxious in a motor vehicle. He is jumpy and on edge, is easily startled. He tries to avoid being in motor vehicle[s] as much as possible. He continues to sleep poorly. He reports intrusive thoughts and reports some nightmares relating to [the] accident. He remains in counseling on [a] regular basis. He is slow on serial 7 subtractions task. He made several errors and was rather choppy and distractible. He learned a four-word list and showed fair recall after a brief delay. He copied geometric shapes and angles and again showed fair to good recall after brief delay.

(Tr. 670.) Dr. Kofoed diagnosed post traumatic stress disorder, possible driving related phobia, and depressive disorder, not otherwise specified.

On October 23, 2007, Dr. Craig Horn completed a "Psychiatric Review Technique" form and a "Residual Functional Capacity Assessment" form. (Tr. 672-89.) In completing these forms, Dr. Horn reviewed Enos's medical records, which included Dr. Kofoed's most recent assessment. In discussing Enos's functional capacity, Dr. Horn opined that Enos is capable of understanding and carrying out short and simple instructions, but not detailed instructions; understanding normal work-hour requirements; being prompt; making simple work-related decisions; asking simple questions; and requesting assistance from peers and supervisors. Dr. Horn also found that Enos would perform best in a job which did not require on-going public interaction. Enos would respond appropriately to changes in a routine setting; be aware of personal safety; be able to avoid work hazards; and be able to travel to and from work using available transportation. (Tr. 688.)

There appear to be no records discussing Enos mental impairments again until August 2008, when Enos reported to Kathryn K. Benson, FNP, at Premier Family Medicine PA. (Tr. 699-701.) Enos complained of depression described as feeling blue, sad, nervous, and tired. Enos indicated

that the onset had been gradual and occurring in a persistent pattern for six months.  Benson noted that

> [t]he symptoms have been associated with death of a loved one . . ., depression in the past (has been off his meds for over 1 yr), difficulty sleeping, early morning awakening, episodes of spontaneous crying, feeling tired, financial difficulties (can't work due [to] his depression and anxiety and his inability to ride in a car . . .), lack of energy, loss of libido, psychiatric illness in the past, recent changes in life (has a new wife, no money coming in and is having trouble paying bills, has been denied for disability and there is a deposition coming up in his former wife's wrongful death suit which [has] him extremely upset) and suicidal thoughts (states that he would not do it because of his current wife) . . . .

(Tr. 699.) Benson found that Enos was angry, anxious (concerning re-living the motor vehicle accident during his deposition, noting that his emotions appeared as raw as they were at the time of the accident, and noting that she had never seen him in this state), agitated (rocking back and forth, crying, and rallying against the judicial system and the hospital that discharged his wife with a torn diaphragm after the accident), depressed, and sad.  Benson assessed Enos with depressive disorder, severe, not elsewhere classified and encouraged him to go to Laurens County Mental Health Office to recommence his counseling.  (Tr. 700.)

In September 2008, Enos presented to Good Shepard Free Medical Clinic for depression, anxiety, and post traumatic stress disorder.  Enos was prescribed medication (Tr. 703) and was referred to the Beckman Center for Mental Health Services (see Tr. 711).  Enos was initially screened by the Beckman Center in October 2008 and began receiving treatment thereafter. (Tr. 707-14; 723-39; 742-60.)[3]  Enos received treatment for post traumatic stress disorder and depressive disorder, not otherwise specified.

---

[3] The court observes that the records included from page 721 through 765 in the transcript were submitted for the first time to the Appeals Council and many of the records do not appear to be duplicative to those provided to the ALJ.  Further, a few of the records post-date the ALJ's July 29, 2009 decision.

Based on the records before the court, during Enos's treatment at the Beckman Center he was assessed with the following GAF scores. On January 22, 2009, Diane S. Milam assessed Enos with a GAF score of 50.[4] (Tr. 735-36.) On January 27, 2009, Dr. Alfred R. Ebert assessed Enos with a GAF score of 55.[5] (Tr. 707, 710, 739.) Further, Lisa A. Comotto assessed Enos in April, July, and October 2009 with GAF scores of 68, 65, and 65, respectively. (Tr. 748, 751, 755.)

Additionally, Dr. Patrick Mullen performed a consultative examination on March 20, 2009. He found that Enos had a GAF score of 35; assessed Enos with an organic mental disorder, probable traumatic brain injury, major depression, and post traumatic stress disorder; and opined that Enos was not a candidate for employment in any capacity.[6] (Tr. 715-20.)

## B.    Opinion Evidence

Enos first argues that the ALJ erred in failing to give great weight to the opinions of a treating physician, Dr. Albert R. Ebert, and two treating counselors, Barbara J. McIntyre and Diane S. Milam. Enos asserts that these opinions are corroborated by consultative examiners Dr. Bruce A. Kofoed and

---

[4] According to the DSM-IV, a GAF score between 41 and 50 may reflect "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id. at 34. Further, a GAF score between 51 and 60 may reflect "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers)" and a GAF score between 61 and 70 may reflect "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id.

[5] Enos argues vehemently that the ALJ erred in stating that Enos's GAF score in January 2009 was 55; however, contrary to Enos's arguments, the record reveals in three different places that Enos was assessed a GAF score of 55 on January 27, 2009 by Dr. Ebert. (Tr. 707, 710, 739.) Therefore, Enos's argument that the ALJ erred in this statement is wholly without merit.

[6] The ALJ gave this opinion little weight, which Enos does not appear to have challenged in this appeal. To the extent that any of Enos's statements could be construed as challenging the ALJ's decision in this respect, the court finds that he has failed to support this argument or demonstrate that the ALJ's decision was unsupported by substantial evidence or controlled by an error of law.

Dr. Patrick B. Mullen.  Additionally, although not included in Enos's statement of issues, he argues that the opinions of state agency reviewers Dr. Craig A. Horn and Dr. Larry D. Clanton "are clearly baseless."  (Pl.'s Br. at 11, ECF No. 10 at 11.)

### 1.     Weighing Opinion Evidence

As an initial matter, the applicable law in weighing the opinions of treating physicians differs from the applicable law in weighing opinions from other sources.  Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. § 404.1527(d)(2).  However, "the rule does not require that the testimony be given controlling weight."  Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."[7] Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion.  Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' "  Id. (quoting Craig, 76 F.3d at 590).

---

[7] The Social Security regulations provide that all medical opinions, including opinions of non-examining state agency doctors, will be evaluated considering these same factors.  20 C.F.R. § 404.1527(f).

The Social Security regulations further distinguish between opinions from "acceptable medical sources" and "other sources."[8] See 20 C.F.R. § 404.1513(d). Social Security Ruling 06-03p further discusses "other sources" as including both "medical sources who are not acceptable medical sources" and "non-medical sources." Only acceptable medical sources can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose opinions may be entitled to controlling weight. SSR 06-03p. The ALJs are instructed to apply the factors, or their basic principles, for evaluating the opinions of acceptable medical sources, which are listed in 20 C.F.R. § 404.1527(d), in evaluating the opinions from other sources with the understanding that not every factor may apply. SSR 06-03p. Social Security Ruling 06-03p further explains that consideration of following factors would be appropriate:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
- Any other factors that tend to support or refute the opinion.

Id.

### 2. Barbara McIntyre, M.A.

As stated above, the ALJ found that Enos was under a disability through October 7, 2007. However, he found medical improvement beginning on October 8, 2007 such that there were jobs in significant numbers in the economy that Enos could perform.

---

[8] The court observes that in this matter, neither McIntyre nor Milam qualify as an acceptable medical source, such as a licensed physician or licensed or certified psychologist; rather, as counselors, their opinions would be evaluated as "other sources." See SSR 06-03p.

To the extent that Enos challenges the weight given to McIntyre's opinions, the ALJ noted that under the regulations she is considered an "other source" and gave her opinions substantial weight. Further, the court observes that McIntyre began treating Enos in September 2005 and that her last opinion is dated September 30, 2007, which is during the time period that the ALJ found that Enos was under a disability. There are no records or opinions from McIntyre after September 30, 2007. The ALJ thoroughly discussed McIntyre's opinions and the court finds that Enos has failed to demonstrate that ALJ's evaluation of McIntyre's opinions are unsupported by substantial evidence or controlled by an error of law.

      3.      **Diane S. Milam and Dr. Alfred R. Ebert**

With regard to the records and opinions of Milam and Dr. Ebert from the Beckman Center, as noted above, the court observes that only a few of these records were presented to the ALJ. (Tr. 707-20.) The records reveal that on January 27, 2009, Enos reported to Dr. Ebert that he wanted to achieve better concentration, not be so jumpy, and to stop feeling overwhelmed. (Tr. 707.) Enos also reported that he "cannot stand sirens; being in traffic; gets upset easily"; that he is outraged over the sentence the other driver from the accident received; that he married a friend in July 2008 who has helped him recover and managed his daily business affairs; and that he is sleeping better and able to do more things. (Tr. 709.) At that time, Dr. Ebert diagnosed Enos with post traumatic stress disorder, depressive disorder, not otherwise specified, and assessed Enos with a GAF score of 55. (Tr. 710; see also 707.) Records also indicate that Milam counseled Enos on January 22, 2009 and February 11, 2009. (Tr. 711-12.) Milam indicated that the plan would be to provide Enos with services for his impairments and improve his level of functioning. (Tr. 711.) On February 17, 2009, Milam indicated that Enos is very emotional talking about his wife's accident and the other driver; that he "is very open and easily expresses his feelings"; and that he is "resistant to the idea that he

will ever be any different." Enos reported that he "is somewhat better after 4 years[,] 'at least I'm not hiding in the closet anymore' " and that he has a supportive wife. (Tr. 712.)

It is clear that the ALJ considered these records in his opinion, and as noted above, the ALJ did not err in finding that Dr. Ebert assessed Enos with a GAF score of 55. (Tr. 28, 35, 707, 710.) For example, the ALJ noted that Dr. Ebert found that Enos was "alert, oriented, with memory, attention, and concentration in[]tact." (Tr. 31; see also Tr. 709.) Moreover, to the extent that Enos's argument is based on the fact that Dr. Ebert diagnosed Enos with post traumatic stress disorder and depressive disorder, a diagnosis is insufficient to establish disability as "[t]here must be a showing of related functional loss." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

The additional records submitted to the Appeals Council consist of records from the Beckman Center. (Tr. 721-60.)[9] They include notes by a staff member from Enos's initial screening with the Beckman Center in October 2008 (Tr. 723-24, 727); a plan of care completed in January 2009 signed by Milam and Dr. Ebert (Tr. 725-26); an initial clinical assessment dated January 22, 2009 completed by Milam that contains a GAF score of 50 (Tr. 728-35; see also Tr. 736-37); counseling notes by Milam from March 2009, April 2009, August 2009, and November 2009 (Tr. 743, 745, 752, 753, 756, 757); and assessments by another staff member from April 2009, July 2009, and October 2009, indicating GAF scores of 68, 65, and 65, respectively (Tr. 727-48, 750-51, 754-55). These documents were made part of the record, and the Appeals Council determined that they did not provide a basis for changing the ALJ's decision. (Tr. 2, 4.)

Enos relies heavily upon the GAF assessment by Milam in January 2009 indicating a score of 50. However, GAF scores provide a snapshot of the subject's functioning at a given time, and the

---

[9] Records which are duplicative to those submitted to the ALJ are found at pages 738 through 739 and 742. (Compare Tr. 709-10, 712.)

other evidence submitted reveals a GAF score of 55 in January 2009 as well as GAF scores of 68 and 65 later in 2009. The court finds that reviewing the record as a whole and considering the new evidence submitted to the Appeals Council, Enos cannot demonstrate that the ALJ's determination is not supported by substantial evidence or controlled by an error of law. While Enos may point to selective excerpts from the counseling notes which may support his argument, this evidence when considered in conjunction with the other notes in the record does not render the ALJ's decision unsupported.

### 4.    Dr. Craig A. Horn and Dr. Larry D. Clanton

To the extent that Enos's arguments may be interpreted as challenging the weight the ALJ gave to the opinions of Drs. Horn and Clanton, the court finds that Enos has failed to demonstrate that reversal is warranted. Enos argues generally that these opinions are baseless and that as agency reviewers they did not examine Enos and did not possess all of Enos's records. Upon review of the entire record and the parties' briefs, the court finds that Enos has failed to demonstrate that the ALJ's decision is unsupported or controlled by an error of law with regard to these opinions. See SSR 96–6p (stating that "[s]tate agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act"); Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986) (stating that the opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner); Stanley v. Barnhart, 116 Fed. Appx. 427, 429 (4th Cir. 2004) (unpublished) (disagreeing with the argument that the ALJ improperly gave more weight to residual functioning capacity assessments of non-examining state agency physicians over those of examining physicians and finding that the ALJ properly considered evidence provided by those physicians in context of other medical and vocational evidence).

Further, with regard to Dr. Clanton, Enos argues that the ALJ erred in interpreting Dr. Clanton's statement that Enos could perform simple tasks for two hours to the level of substantial gainful employment and that the ALJ failed to properly explain the weight given to his opinion in accordance with 20 C.F.R. § 404.1527(f)(2)(ii). As stated above, the ALJ assigned significant weight to Dr. Clanton's opinion, which covered the period of time that the ALJ found that Enos was under a disability. Therefore, assuming without deciding that the ALJ erred in evaluating or discussing Dr. Clanton's opinion, the court finds that any error is harmless. See Shinseki v. Sanders, 556 U.S. 396 (2009) (stating that a party attacking an agency determination bears the burden of showing that an error was harmful); Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (internal quotation marks and citations omitted); Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error applies to Social Security disability cases).

## C.    Medical Improvement

Although not listed as an issue in Enos's brief, he appears to argue that the ALJ erred in finding that medical improvement occurred on October 8, 2007. Specifically, Enos appears to challenge the ALJ's discussion and interpretation of Dr. Kofoed's October 8, 2007 assessment and argues that the Commissioner did not meet his burden to demonstrate that improvement occurred on that date.

The regulations define medical improvement as

any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or

continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

20 C.F.R. § 404.1594(b)(1). In this case, the comparison date for medical improvement would be the disability onset date, July 2, 2005. See Program Operations Manual System ("POMS") § DI 28010.105(D)(3) (recognizing that, for purposes of a closed period of disability, the onset date of disability is used as the comparison point). Enos argues that while Dr. Kofoed's examination shows some evidence of improvement, it does not demonstrate that Enos is able to engage in substantial gainful employment. (See Pl.'s Br. at 14-15, ECF No. 10 at 14-15; Pl.'s Reply Br. at 1-2, ECF No. 16 at 1-2.) Upon review of the Dr. Kofoed's examination, which is summarized above, the court finds that Enos has failed to demonstrate that the ALJ's finding of medical improvement was not supported by substantial evidence. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]").

**D.    Credibility**

Enos argues that the ALJ erred as a matter of law in failing to consider his excellent work history in evaluating his credibility. In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594. In this matter only the second step is at issue,[10] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects her ability to work." Id. In making these

---

[10] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).

determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's [symptoms] and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges []he suffers." Id. Further, "[i]n analyzing a claimant's subjective complaints, . . . an ALJ must consider: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the condition; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).

In evaluating Enos's credibility, the ALJ found that beginning October 8, 2007, Enos's subjective complaints were "inconsistent with his prior statements documented in the medical record, the medical evidence in the record, and with his allegations of limitations." (Tr. 32.) The ALJ proceeded to discuss specific examples of these inconsistencies. (Tr. 32-35.) A claimant's work history is only one of many factors for consideration. See 20 C.F.R. § 404.1529; SSR 96-7p. Further, contrary to Enos's argument that the ALJ "seized on the fact that Mr. Enos is remarried and the fact that he received a $50,000 settlement for his injuries in an automobile collision," it is clear

from the ALJ's opinion that he complied with the above discussed law.  Accordingly, upon review of the record the court finds that Enos has failed to demonstrate that the ALJ erred in evaluating Enos's credibility.  See SSR 96-7p; Craig, 76 F.3d at 595; Gowell, 242 F.3d at 796; see also Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (per curiam) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints).  Moreover, the court may not substitute its judgment for the ALJ's. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

**E.    RFC Determination**

Based on the above allegations of error, Enos contends that the ALJ erred in his RFC determination and the subsequent hypothetical question to the vocational expert.  For all of the foregoing reasons and in light of the fact that the court's findings that Enos has failed to demonstrate that the ALJ erred, reversal is not warranted on this ground.

## RECOMMENDATION

For the foregoing reasons, the court finds that Enos has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

November 10, 2011                         Paige J. Gossett
Columbia, South Carolina                  UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).