IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| XAVIR FRANCIS ENOS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 0:10-cv-02179 |
| | ) | |
| vs. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Magistrate Judge Paige J. Gossett's Report and Recommendation (R&R) that this court affirm the decision of the Commissioner denying plaintiff's application for disability insurance benefits (DIB). Plaintiff has filed specific written objections. For the reasons set forth below, the court rejects the magistrate judge's R&R and remands the case to the Commissioner for further proceedings.

## I.  BACKGROUND

Plaintiff Xavir Francis Enos filed for DIB in January of 2007, alleging that he became disabled beginning June 2, 2005 as a result of a motor vehicle accident that killed his wife and caused Enos to undergo surgery. Tr. 10-18. The Administrative Law Judge (ALJ) held a hearing on Enos's application for DIB on April 8, 2009. Tr. 11. On July 29, 2009, the ALJ issued a decision concluding that Enos was disabled between July 2, 2005 and October 7, 2007, but was not disabled from October 8, 2007 to the date of the ALJ's decision. Tr. 10-18. The ALJ concluded that Enos "had the residual functional capacity [(RFC)] to perform a full range of work at all exertional levels" after October 8, 2007, despite still having "some limitations secondary to nonexertional impairments."

1

Tr. 31. Following Enos's appeal, on November 10, 2011, the magistrate judge submitted an R&R recommending that this court adopt the ALJ's decision.

Enos was born on April 25, 1957, and was forty-eight years old at the time he allegedly became disabled. Tr. 26. He has a high school education and past relevant work experience as a material handler and a security guard. Tr. 150, 156. On July 2, 2005, Enos, his wife, and his adult son were involved in a motor vehicle accident that resulted in the death of his wife. Tr. 10-18. Following the accident, Enos alleges he began suffering from post-traumatic stress disorder (PTSD), depression with high anxiety, panic disorder, phobic disorder, unresolved grief with a high level of survivor's guilt, suicidal ideation, and depression. Tr. 149. He alleges that these conditions are ongoing, and persisted beyond October 8, 2007.

Enos was initially treated at Greenville Memorial Hospital, and a variety of medical professionals have seen Enos for mental health care since the accident. Tr. 153. On September 14, 2005, a care provider at Fairfield Family Practice diagnosed Enos with PTSD after he reported experiencing crying episodes, poor sleep, and nightmares. Tr. 629-30. In September of 2005, Barbara McIntyre, M.A, began counseling Enos. Tr. 662. McIntyre diagnosed Enos with panic disorder, phobic disorder, and unresolved grief with high survivor's guilt, and rated Enos's global assessment of functioning (GAF) at 35.[1] Tr. 662. McIntyre indicated Enos responded well to a combination of medication and regular therapy. Tr. 662. McIntyre continued to see Enos sporadically, and indicated that while he was not improving with regard to driving a vehicle and had limited social

---

[1] A GAF score between 31 and 40 may reflect "[s]ome impairment in reality testing or communication" or a "major impairment in several areas such as work, school, family relations, judgment, thinking, or mood." A GAF score may reflect the severity of symptoms or impairment in functioning at the time of the evaluation. American Psychiatric Association, The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. 2000) [hereinafter DSM-IV].

2

contact, if he had transportation and a job with little physical stress, he could and would contribute to his own well-being. Tr. 665. On September 30, 2007, McIntyre stated she had seen Enos only a few times since her last report in 2006 and had seen some improvements but noted that he continued to report panic attacks in public places and when driving or riding in a car. McIntyre opined that Enos's overall needs had not changed. Tr. 661.

Enos saw Dr. Bruce A. Kofoed on May 9, 2007, for a consultative examination. Dr. Kofoed reported that Enos showed signs of anxiety and became tearful frequently during the consultation. Tr. 634. During the examination, Enos reported difficulty sleeping, feelings of guilt that he survived the accident, and a general retreat from social activities and interaction. Tr. 634. Enos also reported that he had not driven since the accident and was very anxious in a car and in crowds. Tr. 633-34. Enos exhibited slow work speed and low average working memory, but tested in the average range for all other cognitive abilities. Tr. 636.

On May 25, 2007, Dr. Larry D. Clanton reviewed Enos's medical records. Dr. Clanton opined that Enos "[was] able to carry out simple tasks for two hours at a time without special supervision," but that he "would not be well suited for working with the general public." Tr. 653. Dr. Clanton concluded that Enos's allegations were credible and that his symptoms were severe but would not preclude him from carrying out basic work functions. Tr. 653.

Based on the medical reports available from September 2005 to October 2007, the ALJ found that Enos had the RFC to perform a full range of work at all exertional levels; however, his non-exertional limitations included only performing "simple one to two step

tasks in a low work stress environment." Tr. 25-26. The ALJ concluded that during this period, Enos was disabled.

On October 8, 2007, Dr. Kofoed completed a second consultative examination of Enos, finding him to be extremely anxious and labile. Tr. 668. Enos again reported fearfulness about being in a vehicle and that he still had not driven since the accident. Enos also reported significant problems with anxiety, intrusive thoughts, and poor sleep. However, Enos reported feeling he had made improvements, felt less tearful and emotional, and felt more positive about life overall. Tr. 668. Dr. Kofoed diagnosed Enos with PTSD, possible driving related phobia, and depressive disorder, not otherwise specified.

On October 23, 2007, Dr. Craig Horn reviewed Enos's medical records, including Dr. Kofoed's October 8, 2007 assessment. Dr. Horn concluded that Enos was capable of understanding and carrying out short and simple instructions, understanding normal work-hour requirements, and making simple work-related decisions. Dr. Horn determined Enos would perform best at a job which did not require ongoing public interaction. Tr. 688.

From October 2007 to August 2008, the record does not include any medical assessments of Enos. In August 2008, Enos reported to Kathryn K. Benson, a Family Nurse Practitioner. Tr. 699-701. Enos complained of depression, which had onset gradually and persisted for six months. Tr. 699. Benson found that Enos was angry, anxious, agitated, and depressed. Benson assessed Enos with severe depressive disorder, not elsewhere classified, and encouraged him to recommence counseling. Tr. 700.

In September 2008, Enos visited Good Shepard Free Medical Clinic for depression, anxiety, and PTSD. Enos was prescribed medication and referred to the Beckman Center for Mental Health Services. Tr. 703. Enos began treatment at the Beckman Center in October 2008 for PTSD and depressive disorder. Tr. 711. On January 22, 2009, Diane S. Milam assessed Enos with a GAF score of 50. Tr. 735-36. On January 27, 2009, Dr. Alfred R. Ebert assessed Enos with a GAF score of 55. Tr. 707, 710. Lisa A. Comotto assessed Enos in April, July, and October 2009 with GAF scores of 68, 65, and 65, respectively.[2] Tr. 748, 751, 755.

Reviewing Enos's request for DIB, the ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. The ALJ conducted two analyses—one from July 2, 2005 to October 8, 2007, and another from October 8, 2007 to the hearing date. Tr. 12; see 20 C.F.R. § 404.1520(a). First, the ALJ found that Enos had not engaged in substantial gainful activity since July 2, 2005, the alleged onset date. Tr. 14; see 20 C.F.R. § 404.1520(b). Second, the ALJ found that from July 2, 2005 to October 7, 2007, Enos had a combination of medically determinable severe impairments: depression, anxiety with a panic disorder, and PTSD. Tr. 14; see C.F.R. § 404.1520(c) (an impairment is "severe" if it "significantly limits [an individual's] physical or mental abilities to do basic work activities"). The ALJ also considered the effects of Enos's obesity and found that it was not a severe impairment. Tr. 17. Third, the ALJ found that during the period in which Enos was disabled, he did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. 404 Subpart P, app. 1. Tr. 19; See 20 C.F.R. §

---

[2] A GAF score of 61-70 indicates "[s]ome mild symptoms…or difficulty in social, occupational, or school functioning…but generally functioning pretty well, [and] has some meaningful interpersonal relationships." DSM-IV at 34.

404.1520(d). Fourth, the ALJ found that from July 2, 2005 through October 7, 2007, Enos was unable to perform past relevant work. Tr. 26; see 20 C.F.R. § 404.1565. The ALJ found that while Enos "had the [RFC] to perform a full range of work at all exertional levels . . . his mental impairments created additional non-exertional limitations." Tr. 25-26. Given these findings, the ALJ concluded that Enos was under a disability, as defined by the Social Security Act, from July 2, 2005 through October 7, 2007, but was not disabled after that date. Tr. 27; see 20 C.F.R. § 404.1520(g).

In the analysis to determine whether Enos was disabled after October 8, 2007, the ALJ found that Enos had not engaged in substantial gainful activity since July 2, 2005. Second, the ALJ determined that Enos's medical impairments remained "medically determinable" and "severe." Tr. 30. Third, the ALJ determined that Enos's combination of impairments did not meet or medically equal one of the impairments in 20 C.F.R. 404, Subpart P, app. 1. Tr. 31. Fourth, the ALJ found that Enos was unable to perform past relevant work, beginning on October 8, 2007. Fifth, the ALJ concluded that Enos was able to perform a significant number of jobs in the national economy. Tr. 38.

## II. STANDARD OF REVIEW

This court is charged with conducting a *de novo* review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). This court is not required to review, under a *de novo* standard, or any other standard, the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. See id. The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). This court may accept,

reject, or modify the report of the magistrate judge, in whole or in part, or may recommit the matter to her with instructions for further consideration. 28 U.S.C. § 636(b)(1). A party's general or conclusory objections are not sufficient to challenge a magistrate judge's findings. See Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

Although this court reviews the magistrate judge's recommendation *de novo*, judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" has been defined as,

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Instead, when substantial evidence supports the Commissioner's decision, this court must affirm that decision even if it disagrees with the Commissioner. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456.

### III. DISCUSSION

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

7

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an illness contained in 20 C.F.R. 404 Subpart P, app. 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined by claimant's RFC) and his vocational capabilities (age, education, and past work experience) to adjust to a new job. See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). The applicant bears the burden of proof during the first four steps of the inquiry. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

Enos objects to the R&R, arguing that the decision to terminate disability benefits on October 8, 2007 was based on a defective hypothetical question posed to the Vocational Expert (VE). This court agrees and finds that the hypothetical questions were inadequate to apprise the VE of all of Enos's medically-supported mental impairments, and therefore remands this case for further administrative consideration.

In the fifth stage of the sequential analysis, the Commissioner may carry his burden by obtaining testimony from a VE. Grant v. Schweiker, 699 F.2d 189, 191 (4th

Cir. 1981). Only when a plaintiff can satisfy steps one, two, and three or four of the analysis does the burden shift to the Commissioner to prove that the plaintiff has the capacity to perform an alternative job and that such job exists in the national economy. Hunter, 993 F.2d at 35; Hall, 658 F.2d at 264. An ALJ's hypothetical question must accurately portray the claimant's impairments that are supported by the record, and may deny benefits based on VE testimony only when the hypothetical questions posed include all of a claimant's employment limitations, both exertional and non-exertional. See Dial v. Comm'r of Soc. Sec., 403 Fed. Appx. 420, 421 (11th Cir. 2010) (per curiam) (emphasis added); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); see also Price v. Sec'y of Health & Human Serv., 61 F.3d 904, 907 (6th Cir. 1995) (holding that if VE testimony is to be relied upon, the hypothetical question posed "must reflect 'precisely' the specific exertional and nonexertional limitations of the particular claimant.") (emphasis added); Batts v. Sullivan, 818 F. Supp. 138, 141 (E.D.N.C. 1993) (holding that the ALJ erred by relying on VE testimony in response to hypothetical questions that did not account for all of claimant's impairments, including non-exertional impairments). If the ALJ finds that a plaintiff suffers from a variety of impairments, but does not include all of those impairments in the hypothetical questions to the vocational expert, the hypothetical is flawed and cannot serve as the basis for denial of disability. Swaim v. Califano, 599 F.2d 1309 (4th Cir. 1979).

Assuming that the ALJ's legal analysis was correct through the first four steps of the sequential analysis, the burden shifted to the Commissioner to demonstrate that Enos could perform work that existed in significant numbers in the national economy. The ALJ posed two hypothetical questions to the VE and Enos's attorney posed several

more. In the first hypothetical, the ALJ described an individual that could do "simple one, two-step tasks," "would require a low stress work environment," could not work in a high speed manner, and would require no public contact. Tr. 62-63. The VE testified that such an individual could engage in unskilled work as an industrial cleaner or auto detailer. Tr. 63. However, in the second hypothetical, the ALJ included that the individual "would miss various times from the work, that he would be absent from the workstation the frequency and duration of which would be in the sole discretion of [the] hypothetical individual." Tr. 64. The VE testified that this impairment would "preclude [the individual's] past relevant work or really any other work that [he] would know of." Tr. 65.

Enos's attorney asked the VE if an individual who "couldn't invest himself in a task for more than a few minutes . . . and less than an hour" could find a job, and the VE testified that no jobs existed in the national economy for that hypothetical individual. Tr. 65-66. Dr. Clanton reported that Enos would be able to carry out simple tasks for "two hours at a time without special supervision," Tr. 653, and thus the record reflects Enos's ability to concentrate on a task for no more than two hours. While the ALJ relied on Enos's ability to perform tasks like checking the mail, paying bills, handling finances, studying the Bible, and finishing chores, Tr. 33, none of those tasks are indicative of an ability to concentrate over extended periods of time, much less two hours. See Gustafson v. Astrue, No. 10-6254, 2011 WL 6020786, at *7 (D. Or. Nov. 30, 2011) (concluding that a hypothetical question in regards to concentration must contain limitations "specified by the evidence."); Kemp v. Astrue, No. 09-3318, 2011 WL 4434030, at *14-15 (D.S.C. Sept. 22, 2011) (noting that the record supported limitations

in concentration, and thus the hypothetical properly accounted for plaintiff's inability to maintain concentration for twenty percent of the work day). In fact, the only evidence of Enos's ability to concentrate for two hours at a time was during a cognitive test administered in May 2007. Tr. 37.

Since the ALJ found that Enos had "moderate" limitations in concentration, persistence, and pace on October 8, 2007, Tr. 31, he was required to adequately convey that limitation to the VE. The ALJ's use of the terms "simple one, two step-tasks" and "low stress," Tr. 62-63, did not adequately account for Enos's limitations in concentration. See Tune v. Astrue, 760 F. Supp. 2d 555, 563 (E.D.N.C. 2011) (finding a flawed hypothetical where the ALJ used terms such as "simple, repetitive, one- or two-step," or "low stress" to describe a plaintiff's moderate limitation in concentration); Meredith v. Astrue, No. 09-0713, 2010 WL 3603834, at *2 (W.D. Mo. Sept. 1, 2010) (relying on VE testimony that an individual who was able to understand and follow simple instructions, maintain attention for at least two hours without a break, but could not work directly with the public could perform simple unskilled work at a medium exertional level, such as a cleaner or order filler. The VE testified that if the individual suffered from more severe impairments, and would not be able to work for two hours at a time, the person could not perform those jobs).

Furthermore, Enos's attorney asked the VE whether an individual who had a depressive disorder that "manifested itself in emotional lability and frequent crying spells" would be precluded from work that existed in significant numbers in the national economy, and the VE testified that such a condition would be preclusive. Tr. 66. In October 2007, Enos reported to Dr. Kofoed that while he was less tearful, he

"continue[d] to cry quite frequently." Tr. 669. This self-report was during a time when the ALJ found Enos "generally credible" in regards to statements concerning the limiting effects of his emotional symptoms. Tr. 26. Moreover, Enos's self-reports of crying spells were entirely consistent with the record, including his prior statements and medical records, and the ALJ provided no evidence or reasons why those self-reports should be discredited. Thus, the ALJ improperly excluded this non-exertional impairment from the hypothetical questions. Cf. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 477 (6th Cir. 2003) (finding that the ALJ was not required to include crying spells in hypothetical because the ALJ offered reasons for rejecting claimant's testimony as to crying spells).

Finally, Enos's self-reports and the medical records appear to indicate that in October 2007, Enos would still need breaks during the workday. The hypothetical questions relied upon by the ALJ did not include any such limitation. See Meredith, 2010 WL 3603834, at *2 (considering VE testimony that for simple, unskilled work, including jobs such as a cleaner or order filler, more breaks than were regularly given would lead to termination). The ALJ erred in finding Enos was not disabled beginning October 8, 2007 because the hypothetical questions were inadequate to apprise the VE of all of Enos's non-exertional limitations, and therefore the Commissioner failed to meet his burden.

Since the court remands the ALJ's decision because of the inadequacy of the hypothetical questions posed to the VE, this court need not address the remaining objections to the magistrate judge's R&R.

## IV. CONCLUSION

For the reasons set forth above, the court **ORDERS** that the Commissioner's decision is **REVERSED** and this case is **REMANDED** to the Commissioner for further proceedings.

**AND IT IS SO ORDERED**.

                                          **DAVID C. NORTON**
                                          **UNITED STATES DISTRICT JUDGE**

**February 23, 2012**
**Charleston, South Carolina**